## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                        No. CR 13-1876 JB

JASON LOERA,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Opposed Motion to Declare this Case Complex for Speedy Trial Purposes and to Set Aside the Standard Discovery Orders, filed March 20, 2015 (Doc. 78)("Motion").  The Court held a hearing on April 10, 2015.  The primary issues are: (i) whether the Court should declare this case complex under the Speedy Trial Act, 18 U.S.C. §§ 3161-74; and (ii) whether the Court will continue the May 18, 2015, trial setting.  The Court will not declare this case complex, because it does not involve voluminous discovery, complex factual or legal issues, or a large number of witnesses or charges, and involves only one defendant.  The Court will, however, continue the May 18, 2015, trial setting to August 17, 2015, so that Defendant Jason Loera's attorney, Jerry Walz, can obtain an expert witness to assist him with the various technological issues in this case and find an important fact witness -- Loera's former roommate.  Accordingly, the Court will deny the Motion.

## FACTUAL BACKGROUND

      The facts are fully set forth in the Memorandum Opinion and Order, filed October 20, 2014 (Doc. 62)("MOO").  The Court will provide only a brief summary of those facts here.  In November, 2012, Federal Bureau of Investigation agents determined that Loera was involved in

a scheme to hijack electronic-mail transmissions sent to and from New Mexico Governor Susana Martinez and her 2010 gubernatorial campaign staff leading up to and following the 2010 New Mexico gubernatorial election.  See MOO ¶¶ 1-5, at 5-6.  Accordingly, the agents obtained a warrant to search Loera's residence -- including Loera's computers and other media -- for evidence of computer fraud and electronic-mail hijacking.  See MOO ¶ 1, at 5-6.  While executing the search warrant, the agents discovered a large volume of child pornography images and videos on Loera's laptop computer and compact discs ("CDs").  MOO ¶¶ 50-84, at 15-19. The agents later obtained a warrant to search Loera's laptop and other media for child pornography, and ultimately discovered over a thousand images and forty-two movies of child pornography.  See MOO ¶¶ 97-120, at 21-25.

## PROCEDURAL HISTORY

On May 29, 2013, a grand jury indicted Loera on two counts of receipt of visual depictions of minors engaged in sexually explicit conduct, allegedly occurring on September 6, 2009, and one count of possession of a visual depiction of a minor engaged in sexually explicit conduct, allegedly occurring on February 20, 2010.  See Indictment at 1-2, filed May 29, 2013 (Doc. 2).  On January 9, 2014, a grand jury filed a superseding indictment that charged Loera with three counts of possession of material containing any visual depiction of a minor engaged in sexually explicit conduct, each allegedly occurring on November 20, 2012.  See Superseding Indictment at 1-2, filed January 9, 2014 (Doc. 25)("Superseding Indictment").  Count 1 of the Superseding Indictment concerns the hard drive on Loera's laptop, and counts 2 and 3 each concern a CD seized from Loera's residence.  See Superseding Indictment at 1-2.  On March 7, 2014, Loera filed a motion to suppress the child pornography evidence and a memorandum in support thereof.  See Defendant's Motion to Suppress Evidence, filed March 7, 2014 (Doc. 35);

Memorandum in Support of Motion to Suppress Evidence and Statements, filed March 7, 2014 (Doc. 36)(collectively, the "Motion to Suppress").  The Court held hearings on the Motion to Suppress on May 21-22, 2014, and on August 19, 2014 -- which took a total of approximately eight hours and forty-two minutes.  <u>See</u> Clerk's Minutes Before District Judge James O. Browning (taken May 20-21, 2014), filed May 20, 2014 (Doc. 53)(noting that the parties and the Court spent approximately six hours and five minutes between May 20, 2014, and May 21, 2014, litigating the Motion to Suppress); Clerk's Minutes Before District Judge James O. Browning (taken Aug. 19, 2014), filed August 19, 2014 (Doc. 56)(noting that the parties and the Court spent approximately two hours and forty-seven minutes litigating the Motion to Suppress).  On October 20, 2014, the Court filed the MOO, which denied the Motion to Suppress.  <u>See</u> MOO *passim*.

On November 14, 2014, Loera's former attorneys, David Serna and Thomas Blog, filed the Sealed Ex Parte Motion to Withdraw, <u>see</u> Doc. 64 ("Motion to Withdraw").  In the Motion to Withdraw, Mr. Serna and Mr. Blog asked the Court to allow them to withdraw as Loera's counsel, because of, among other things, Loera's refusal to cooperate with them.  <u>See</u> Motion to Withdraw at 1-4.  At a November 21, 2014, hearing, the Court granted the Motion to Withdraw. <u>See</u> Clerk's Minutes Before District Judge James O. Browning (taken November 21, 2014), filed November 21, 2014 (Doc. 72).  On December 1, 2014, the Honorable Kirtan Khalsa, United States Magistrate Judge for the District of New Mexico, appointed Mr. Walz to serve as Loera's new attorney.  <u>See</u> CJA 20: Appointment of and Authority to Pay Court Appointed Counsel at 1, filed December 1, 2014 (Doc. 70).  On December 3, 2014, Loera filed a Motion to Continue Trial, <u>see</u> Doc. 69 ("Dec. 3, 2014, Motion"), which the Court granted that same day,

rescheduling the December 8, 2014, trial date to December 29, 2014, see Order Granting Continuance of Trial (Doc. 71).

On December 23, 2014, Loera filed the Unopposed Motion to Continue Current Trial Setting of December 29[,] 2014[,] until March 13, 2015, see Doc. 73 ("Dec. 23, 2014, Motion"), which the Court granted on December 31, 2014, see Order Granting Continuance of Trial Set for December 29, 2014 (Doc. 74). On March 4, 2015, Loera filed the Unopposed Motion to Continue Current Trial Setting of March 16, 2015 until May 18, 2015, see Doc. 76 ("March 4, 2015, Motion"), which the Court granted on March 6, 2015, see Order Granting Continuance of Trial Set for March 16, 2015 (Doc. 77).

## 1.   The Motion.

Loera filed the Motion on March 20, 2015. In the Motion, Loera asks the Court to: (i) declare his case complex for speedy trial purposes; and (ii) set aside all standard discovery orders. See Motion at 1. Loera explains that the Court appointed his current counsel -- Mr. Walz -- on December 1, 2014. See Motion ¶ 1, at 1. Loera points out that, to determine whether to declare this case complex, the Court should consider whether

> "the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section."

Motion ¶ 2, at 1 (quoting 18 U.S.C. § 3161(h)(7)(B)(ii)).

According to Loera, Plaintiff United States of America "wants to reduce this case to a simple argument that child pornography material was found on a computer and/or discs provided by Defendant," but Loera says that the case is far more complex than the United States leads the Court to believe. Motion ¶ 10, at 3. Loera argues that this case is unusually complex, because of the novel questions of law and fact involved "in the obtaining and processing of the evidence

- 4 -

against Defendant coupled with the need for continuity of counsel."  Motion ¶ 3, at 1-2.  Loera contends that Mr. Serna did not adequately represent him at the suppression hearing, and he has asked his current counsel, Mr. Walz, to review the transcripts from that hearing to determine if the suppression issues can be reopened procedurally.  See Motion ¶ 5, at 2.  Loera explains that this case requires the complex analysis of computer technology, and how to obtain, process, and store data on computers and CDs.  Motion ¶ 6, at 2.  According to Loera, Mr. Walz "makes no claim to have even a moderate understanding of this type of computer technology" and will, therefore, need to obtain substantial assistance from a qualified computer expert.  Motion ¶ 6, at 2.

Loera says that the United States may have hundreds, if not thousands, of electronically transmitted images of child pornography.  See Motion ¶ 7, at 2.  Loera contends that, because of the sensitive nature of these images, Mr. Walz must review and analyze them at computers that the United States Department of Justice owns.  See Motion ¶ 8, at 2.  Loera adds that Mr. Walz will also need to locate all of the individuals who may have had access to Loera's computer and CDs.  See Motion ¶ 9, at 2.  Loera contends that all of these tasks are time consuming and complex.  See Motion ¶ 9, at 2.

Loera asserts that the United States has not proffered any evidence that anyone saw Loera downloading child pornography images or visiting child pornography websites.  See Motion ¶ 11, at 3.  Loera says that, in other words, he must prove "negative conduct" and has spent considerable resources to engage in that vigorous defense.  Motion ¶ 12, at 3.  Loera agrees to waive his speedy trial rights, and argues that "the ends of justice are served by declaring this case complex and the need to set aside the standard discovery orders outweighs the interest of the public and Defendant in a speedy trial."  Motion ¶ 14, at 3.  Loera contends that, because he

- 5 -

faces such a lengthy sentence if convicted, granting the Motion would not prejudice either him or the United States.  See Motion ¶ 14, at 3.

2.     **The Response.**

The United States responded to the Motion on March 27, 2015.  See United States' Response to Defendant's Motion to Declare this Case Complex for Speedy Trial Purposes and to Set Aside the Standard Discovery Orders, filed March 27, 2015 (Doc. 79)("Response").  In the Response, the United States asks the Court to deny the Motion, because this case is "straightforward, not complex."  Response at 1.  The United States says that the Motion does not meaningfully distinguish this case from any other child pornography case.  See Response at 2.  The United States asserts that Loera should already know who, if anyone, had access to his computer and CDs.  See Response at 2.  The United States adds that the evidence will show that Loera alone accessed those items.  See Response at 2.

> In fact, one of the individuals who rented an upstairs bedroom in the same house where Defendant's room (a converted garage) was, reports that Defendant was very private with his laptop computer.  For example, the renter recalled returning home from work to discover Defendant using his laptop in a common area of the house and Defendant immediately closing his laptop and retreating to his room.  He also recalled that Defendant maintained a deadbolt lock on his room and kept the key on his keychain.  Finally, the renter never recalled Defendant having visitors spend time at the residence.

Response at 2 n.1.  The United States argues that, even if another person had access to Loera's computer and CDs, Loera has had more than enough time to locate those individuals.  See Response at 2.

The United States contends that, moreover, whether another person accessed Loera's media does not provide Loera with a defense to the charges he is facing.  See Response at 2.  The United States explains that, because this is a possession case, the United States needs only to show that the child pornography existed on Loera's media and that Loera knew of its existence.

See Response at 2.  The United States says that it can meet this standard, because Loera's media contains a large volume of easily accessible child pornography intermingled with documents, folders, and applications related to Loera and his work.  See Response at 3.  The United States contends: "Defendant's claim that this case should be declared complex so that he can have additional time to locate some unidentified individual, for a fact that even if true would not provide him with a defense, should be rejected."  Response at 3.

In response to Loera's assertion that the Court should designate the case complex, because he needs to obtain substantial assistance from a qualified computer expert, the United States says that Loera has already received that assistance, "including a comprehensive review of the evidence at the Regional Computer Forensics Lab."  Response at 3.  The United States adds that Loera should not need more time to understand "whatever computer issues he believes exist in this case."  Response at 3.  The United States argues that no computer expert can change that FBI agents discovered countless images on Loera's laptop.  See Response at 3.

In response to Loera's contention that he needs additional time to review the transcripts and evidence from the Motion to Suppress to determine if the matter can be reopened procedurally, the United States says that there is nothing novel about how the evidence was obtained or processed in this case.  See Response at 3.  The United States argues that Mr. Serna did a "yeoman's job" litigating the Motion to Suppress, and the Court thoroughly analyzed the suppression issues in the MOO.  Response at 3.  The United States says that the Court heard evidence and argument over a three-day hearing, and issued a meticulous opinion thoroughly discussing the issues and finding three alternative bases upon which to deny the Motion to Suppress.  See Response at 3.  The United States concludes: "This ground does not support a complex designation for this case."  Response at 3.

3.      **The Reply**.

Loera replied to the Response on April 7, 2015.  See Reply in Support of Defendant's Opposed Motion to Declare this Case Complex for Speedy Trial Purposes and to Set Aside the Standard Discovery Orders, filed April 7, 2015 (Doc. 83)("Reply").   In the Reply, Loera reiterates the arguments from the Motion -- namely, that reviewing the transcript from the suppression hearing, reviewing the child pornography evidence on Loera's media, determining who had access to or used Loera's media, and obtaining an expert witness will be time consuming.  See Reply at 1-5.  Loera notes that the Court did not appoint Mr. Walz until December 12, 2014.  See Reply at 3.

Loera contends that, although Mr. Walz has met with the two Assistant United States Attorneys on the case, he has not arranged a specific date or time to review the child pornography evidence on Loera's media.  See Reply ¶ 6, at 2.  According to Loera, "[t]he logistics of just setting up an appropriate time and place for reviewing the evidence is time consuming and complex."  Reply ¶ 6, at 2.  Loera adds that any expert he retains "would need substantial time to work out a methodology where technical review can take place with no recrimination that the expert may be acting inappropriately."  Reply ¶ 7, at 2.  Loera asserts that, based on the transcript from the suppression hearing, he may also need to file additional pretrial motions.  See Reply ¶ 11, at 3.

Loera says that, despite the United States' attempt to frame this case as simple and straightforward, complex issues of law and fact permeate this case.  See Reply ¶ 15, at 3.  Loera argues that refusing to deem this case complex and rushing to trial would seriously disadvantage him.  See Reply ¶ 16, at 3.  Loera concludes the Reply by stating that

> [t]here is no question that a jury, no matter how the potential jurors may respond
> in voir dire, will have a significant prejudice against defendant based on the very

- 8 -

nature of the charges.  As much as we would like to believe that the burden is on the Government to prove guilt beyond a reasonable doubt, there is no legitimate debate that the Defendant will need to offensively prove he did not have knowledge of the criminally offensive material and did not intentionally transmit, receive or store such material.

Reply ¶ 17, at 4.

### 4.    **The April 10, 2015, Hearing.**

The Court held a hearing on the Motion on April 10, 2015.  See Transcript of Hearing (taken Apr. 10, 2015)("Tr.").[1]  Loera took the floor first, reiterating his position that the case is complex, because of the lengthy MOO, and because of the difficulty in obtaining an expert witness who is willing to work and testify on Loera's behalf.  See Tr. at 2:21-6:1 (Walz).  Loera added that he had wrongly assumed that Mr. Blog, who had helped Mr. Serna with many of the technical issues in the case, was a qualified expert who could testify at Loera's trial.  See Tr. at 9:22-24 (Walz).  Loera said that he eventually realized that, although Mr. Blog had an extensive background in these technical issues, he did not think he could pass muster as an expert under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and needed to find another expert.  See Tr. at 9:22-10:10 (Walz).  Loera said that another issue that adds to the complexity of his case is that he has been unable to track down a former roommate who had access to Loera's computer and has apparently never been interviewed.  See Tr. at 6:2-19 (Walz).  Loera explained that, even if he stopped working on every other case that he has, he would not be able to get Loera's case ready for trial by the trial date -- May 18, 2015.  See Tr. at 7:19-22 (Walz).  Loera concluded his argument by asking the Court to declare the case complex and to give the parties at least a three-month continuance.  See Tr. at 11:25-12:5 (Walz).

---

[1]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final version may have slightly different page and/or line numbers.

The Court asked Loera if ordering a ninety-day continuance would solve his issues, and Loera said that he "believe[d] it would."  Tr. at 12:12-17 (Court, Walz).  Loera then explained that he intended to file a motion to exceed his spending cap under the Criminal Justice Act[2] and that the Court declaring the case complex would make it easier for him to obtain that extra funding.  See Tr. at 12:17-13:22 (Walz).  Loera said that, while his preference is for the Court to declare the case complex, a ninety-day continuance would also be acceptable.  See Tr. at 14:12-13 (Walz).

In response, the United States repeated many of its arguments from the Reply -- specifically, that the case is a simple child pornography possession case, and does not involve many witnesses or difficult factual issues.  See Tr. at 15:4-17:11 (Tuckman).  The United States said that, nonetheless, it would not oppose a ninety-day continuance.  See Tr. at 17:11-14 (Tuckman).  The Court said that every case involves a certain amount of complexity, regardless whether it is a child pornography, gun, or drug possession case.  See Tr. at 19:15-17 (Court). The Court explained that, generally, complex cases involve multiple defendants or some other aspect that makes the case unique -- none of which are present in this case.  See Tr. at 19:17-21 (Court).  The Court stated that, if it designated this case complex, it might be compelled to designate every child-pornography case complex.  See Tr. at 19:21-24 (Court).  The Court said that, for those reasons, it would deny the Motion.  See Tr. at 20:3-4 (Court).

## LAW REGARDING THE SPEEDY TRIAL ACT

The Speedy Trial Act requires "that an accused person's trial must begin within seventy days of his indictment or initial appearance, whichever is later."  United States v. Dominguez-Maqueda, No. CR 06-0086 JB, 2006 WL 1308266, at *3 (D.N.M. Mar. 7, 2006)(Browning,

---

[2]The Criminal Justice Act authorizes federal funding to provide counsel "for individuals who are financially unable to obtain adequate representation."  18 U.S.C. § 3006A.

J.)(quoting <u>United States v. Cano-Silva</u>, 402 F.3d 1031, 1034 (10th Cir. 2005))(internal quotation marks omitted).  "The purpose of the Speedy Trial Act is to protect the defendant from excessive pre-trial delay and incarceration by the government and to protect the public's interest in the speedy resolution of justice."  <u>United States v. Larson</u>, 417 F.3d 741, 746 (7th Cir. 2005).  <u>See United States v. Woolfolk</u>, 399 F.3d 590, 594 (4th Cir. 2005)(instructing that the Speedy Trial Act "is intended to mandate an orderly and expeditious procedure for federal criminal prosecutions by fixing specific, mechanical time limits within which the various progressions in the prosecution must occur." (citations omitted)(internal quotation marks omitted)).

The Speedy Trial Act recognizes certain exceptions from the seventy-day requirement, including "that the ends of justice served by taking such action [continuing the trial] outweigh the best interest of the public and the defendant in a speedy trial."  18 U.S.C. § 3161(h)(7)(A).  Before granting a continuance, courts must consider the factors enumerated in the Speedy Trial Act, <u>United States v. Hill</u>, 197 F.3d 436, 441 (10th Cir. 1999), which are:

> **(i)**     Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.

> **(ii)**    Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.

> **(iii)**   Whether, in a case in which arrest precedes indictment, delay in the filing of the indictment is caused because the arrest occurs at a time such that it is unreasonable to expect return and filing of the indictment within the period specified in section 3161(b), or because the facts upon which the grand jury must base its determination are unusual or complex.

> **(iv)**    Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would

> deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

18 U.S.C. § 3161(h)(7)(B).

> After considering these factors, the trial court must then set forth, "in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial."

United States v. Hill, 197 F.3d at 441 (quoting 18 U.S.C. § 3161(h)(7)(A)).  The United States Courts of Appeals for the Ninth and Eleventh Circuits have recognized that "the government's need for additional time to seek the death penalty was a valid reason for an 'ends of justice' continuance."  United States v. Murillo, 288 F.3d 1126, 1133 (9th Cir. 2002)(citation omitted).

See United States v. Mathis, 96 F.3d 1577, 1581 (11th Cir. 1996)(finding no violation of the Speedy Trial Act when the district court determined, in part, that "the prosecutor's wish for reasonable time to prepare a superseding indictment and to obtain approval to seek the death penalty" were good reasons to grant a continuance).  The Ninth Circuit found the district court's articulation of the following reasoning sufficient to grant a continuance:

> [T]he court finds that the ends of justice and indeed the best interests of all parties and the public are served by enabling the Department of Justice a reasonable time within which to exercise its discretion as to whether to seek the death penalty against Defendants in this case.  Depriving the Defendants of the opportunity to offer evidence and argue against a death penalty prosecution under the administrative procedures established by the Department of Justice, and denying the Department of Justice a reasonable opportunity to make a deliberate, fully informed decision about whether to seek the death penalty, would likely result in a miscarriage of justice.  Moreover, the nature of the prosecution of this case, combined with the nature of the potential penalty, render this case so unusual that it would be unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established under 18 U.S.C. § 3161, generally, and that the continuance sought by the Government, and joined in by co-Defendants Moseley and Hironaga, is reasonable under the circumstances.

United States v. Murillo, 288 F.3d at 1134 (internal quotation marks omitted).

The district court must make clear on the record its reasons for granting an ends-of-justice continuance.  See United States v. Toombs, 574 F.3d 1262, 1269 (10th Cir. 2009). "Simply identifying an event, and adding the conclusory statement that the event requires more time for counsel to prepare, is not enough."  United States v. Toombs, 574 F.3d at 1271-72 (citations omitted).  See United States v. Hernandez–Mejia, 406 F. App'x 330, 336-37 (10th Cir. 2011)(unpublished)[3]("[T]he record, which includes the oral and written statements of both the district court and the moving party, must contain an explanation of why the mere occurrence of the event identified by the party as necessitating the continuance results in the need for additional time." (quoting United States v. Toombs, 574 F.3d at 1271-72)).

## ANALYSIS

The Court will deny the Motion.  The Court will not declare this case complex, because it does not involve voluminous discovery, complex factual or legal issues, or a large number of witnesses or charges, and involves only one defendant.  The Court will, however, continue the May 18, 2015, trial setting to August 17, 2015, so that Mr. Walz, can obtain an expert witness to assist him with the various technological issues in this case and find Loera's former roommate.

## I.    THE COURT WILL NOT DECLARE THIS CASE COMPLEX.

The Speedy Trial Act requires "'that an accused person's trial must begin within seventy days of his indictment or initial appearance, whichever is later.'"  United States v. Dominguez-

---

[3]United States v. Hernandez-Mejia is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished opinions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored. . . . However, if an unpublished opinion . . . has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision."  United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court finds that United States v. Hernandez-Mejia has persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

Maqueda, 2006 WL 1308266, at *3 (quoting United States v. Cano-Silva, 402 F.3d 1034)

(internal quotation marks omitted).  The Speedy Trial Act serves two interests: "(1) to protect a

defendant's right to a speedy indictment and trial, and (2) to serve the public's interest in

ensuring prompt criminal prosecutions."  United States v. Williams, 511 F.3d 1044, 1047 (10th

Cir. 2007)(citation omitted).  "In balancing these two often-competing interests, the Act provides

a detailed scheme under which a number of specified intervals are excluded from the seventy-

day computation, thus tolling the speedy trial calendar."  United States v. Williams, 511 F.3d

1044, 1047 (10th Cir. 2007)(citing 18 U.S.C. § 3161(h)).  The Court may exclude

> [a]ny period of delay resulting from a continuance granted by any judge on his
> own motion or at the request of the defendant or his counsel or at the request of
> the attorney for the Government, if the judge granted such continuance on the
> basis of his findings that the ends of justice served by taking such action outweigh
> the best interest of the public and the defendant in a speedy trial.

18 U.S.C. § 3161.  In determining whether to grant a continuance for a complex case, the Court

should consider

> [w]hether the case is so unusual or so complex, due to the number of defendants,
> the nature of the prosecution, or the existence of novel questions of fact or law
> that it is unreasonable to expect adequate preparation for pretrial proceedings or
> for the trial itself within the time limits established by this section.

18 U.S.C. § 3161(h)(7)(B)(ii).  The Tenth Circuit has cautioned that an ends-of-justice

continuance should not be granted "cavalierly" and is intended to be a "rarely used tool."  United

States v. Williams, 511 F.3d at 1048-49.

Loera contends that this case is complex, because it is difficult and time consuming to:

(i) review the transcript from the suppression hearing and the evidence from the Motion to

Suppress; (ii) find a computer expert willing to work for him; and (iii) track down one of his

former roommates.  The Court disagrees that these factors make Loera's case complex.

Complex cases typically involve multiple defendants, voluminous discovery, a large number of witnesses, complex legal or factual issues -- or often a combination of these factors. Many multi-defendant drug-conspiracy cases are complex, because they usually involve a large number of defendants, hundreds of intercepted telephone calls, thousands of pages of linesheets, and many witnesses. It often takes a long time for the defendants in those cases to figure out whether and when to plead guilty, and which of the myriad issues they should contest with pretrial suppression motions. Those cases regularly involve multiple suppression motions, because the United States has gathered so many different forms of evidence through visual surveillance, electronic surveillance, and confidential informants.

Unlike those cases, this one involves a single defendant who faces three charges -- two counts of receiving child pornography and one count of possession of child pornography. Although the Court issued a lengthy opinion denying the Motion to Suppress, the remaining factual and legal issues are relatively straightforward. Ultimately, this case will turn on whether Loera knew there was child pornography on his laptop and CDs. That determination will not involve a large amount of discovery, a large number of witnesses, or several days of testimony. While the Court is reluctant to predict the parties' exact trial strategies, the trial will likely consist of Loera, a few FBI agents, competing computer experts, and perhaps a few other witnesses. Loera has offered no reason why this case is any more complex than the garden-variety child pornography possession cases that come before the Court on a regular basis. Consequently, if the Court were to declare this case complex, it would almost be compelled to declare every child-pornography case complex.

That Mr. Walz must review the transcript from the suppression hearing and the evidence from the Motion to Suppress does not make this case complex. The suppression hearing took a

- 15 -

total of eight hours and was not particularly lengthy.  Similarly, the evidence from the Motion to Suppress is not unusually voluminous.  Reviewing the suppression-hearing transcript and the evidence from the Motion to Suppress are routine duties that attorneys must perform in nearly every criminal case.

As for Loera's contention that it is difficult and time consuming to find an expert witness and Loera's former roommate, those difficulties are also common in civil and criminal cases. While this case's subject matter may make it more difficult for Loera to obtain an expert witness than the average criminal defendant, it does not present an insurmountable hurdle, and the Court sees no sound reason why Loera's difficulty in obtaining an expert witness should make a case complex when § 3161(h)(7)(B)(ii)'s listed factors militate against declaring this case complex. See 18 U.S.C. § 3161(h)(7)(B)(ii).  Specifically, the small number of defendants, the straightforward nature of the prosecution of this case, and the absence of novel questions of fact or law in this case counsel against a complex designation.  Without something more, the difficulties that Loera has identified are insufficient for the Court to declare this case complex.

## II.  THE COURT WILL CONTINUE THE MAY 18, 2015, TRIAL DATE FOR NINETY DAYS, AND RESCHEDULE THE TRIAL DATE FOR AUGUST 17, 2015.

The Court will continue the trial setting to August 17, 2015.  The Court's failure to grant a continuance would result in a miscarriage of justice, and would deny Loera's counsel the reasonable time necessary to effectively prepare for trial, given his need to obtain a computer expert, the amount of time that expert will need to review computer evidence, and Mr. Walz' representation that he has been unable to track down Loera's former roommate.  Loera has agreed to waive his speedy trial rights and has represented that he needs a minimum of ninety days to adequately prepare for trial.  See Tr. at 8:14-17 (Walz); id. at 20:1-12 (Court, Walz).  At

the hearing, the United States said that it had no objection to a ninety-day continuance.  See Tr. at 17:11-14 (Tuckman).  Moreover, the Court finds that a continuance serves the ends of justice, and Loera's interest in obtaining a computer expert and finding an important fact witness outweighs the interests of the public and Loera in a speedy trial.  See 18 U.S.C. § 3161(h)(7)(A).

Continuing the trial setting will serve the ends of justice, because refusing to grant a continuance would deny Mr. Walz the reasonable time necessary to effectively prepare for the case and would result in a miscarriage of justice.  See 18 U.S.C. § 3161(h)(7)(B)(i).  Mr. Walz has not yet found a computer expert.  Once retained, this expert will need time to review Loera's laptop and CDs.  While this review would take a considerable amount of time under the best of circumstances, it is particularly arduous in this case, because of the charges that Loera faces. The computer expert cannot receive the evidence through weblinks, CDs, or other easily transferrable or accessible media, but must instead go directly to the FBI's office or the United States Attorney's Office to review the material.  If Loera wishes to use a computer forensic expert in his defense, which is his right, see United States v. Pablo, 625 F.3d 1285, 1296 (10th Cir. 2010)("An essential ingredient to a fair trial is the defendant's right to present a defense." (citation omitted)), the Court should allow him the opportunity to obtain that expert, and for that expert to review and digest the pertinent evidence.  Forcing Loera to go to trial at this point would likely prevent him from obtaining that witness or, at a minimum, prevent that witness from being adequately prepared to testify at trial.  The Court thus believes that failing to grant a continuance would result in a miscarriage of justice.  See 18 U.S.C. § 3161(h)(7)(B)(i).

The Court does not believe that Loera's motions are mere delay tactics. Mr. Walz has been on this case only since December, 2014.  Up to this point, his motions to continue have requested modest extensions of the trial date.  See Dec. 3, 2014, Motion (requesting a five-day

continuance); Dec. 23, 2014, Motion (requesting a two-and-a-half-month continuance); March 4, 2015, Motion (requesting a two-month continuance). Moreover, rather than offering "conclusory statements lacking in detail," United States v. Toombs, 574 F.3d at 1271, which merely repeat his previous assertions in his motions for continuance, each of Loera's motions has offered a different reason for seeking a continuance. The Dec. 3, 2014, Motion explains that the Court appointed Mr. Walz just two days before he filed the motion, and that he needed time to meet with prior counsel to "properly review discovery, research potential defenses," and "potentially engage in meaningful plea negotiations." Dec. 3, 2014, Motion ¶ 1, at 1. The Dec. 23, 2014, Motion sought a continuance, because Mr. Walz had been unable to obtain Loera's case file from Mr. Serna, needed to meet with Mr. Blog to discuss the technical aspects of the case, and wanted to determine whether to file additional pretrial motions. See Dec. 23, 2014, Motion ¶¶ 1-12, at 1-2. Finally, the March 4, 2015, Motion sought a continuance, because Mr. Walz had recently met with the Assistant United States Attorneys on the case, which led him to conclude that he needed to review new materials and evidence. See March 4, 2015, Motion ¶¶ 6-7, at 2. In the March 4, 2015, Motion, Loera also noted that a continuance was necessary, because, while he had spoken with Mr. Walz over the phone, Mr. Walz had been unable to travel to California -- where Loera currently resides -- to meet with Loera in person and to obtain a full case history. See March 4, 2015, Motion ¶ 8, at 2.

In the Motion and the Reply, Loera asserts that he needs additional time to prepare for trial, because Mr. Walz recently realized the Mr. Blog will be unable to serve as Loera's expert witness. See Motion ¶¶ 6-7, at 2; Reply ¶¶ 6-9, at 2. Because Loera's motions are not merely conclusory statements, lacking in detail and repeating previously asserted grounds for continuance, the Court does not believe that Loera is seeking a continuance only to delay

litigation.  Instead, the Court concludes that there are sufficiently detailed grounds -- Mr. Walz'
recent appointment, his recent realization that Mr. Blog could not serve as Loera's expert
witness, his need to obtain a new expert, and his need to track down a potential fact witness --
upon which the Court may find that granting a continuance of the trial setting serves the ends of
justice.

The Court acknowledges that the Speedy Trial Act expresses a policy that cases should
be tried expeditiously or not at all, see United States v. Larson, 417 F.3d at 746, "calling to mind
that ancient wisdom that 'justice delayed is justice denied,'" United States v. Dominguez-
Maqueda, 2006 WL 1308266, at *6.  Although there may be some tension between the policy
favoring speedy trials and the need for careful deliberation, these two legal strands have not yet
collided in this case.  The Court realizes that a significant amount of time -- almost two years --
has passed since the grand jury indicted Loera on May 29, 2013.  The majority of that period was
consumed, however, with the parties litigating, and the Court ruling on, the Motion to Suppress.
Accordingly, the parties' preparation for trial did not begin in earnest until the Court issued the
MOO on October 20, 2014.  After that point, Loera replaced his former attorney, and Mr. Walz
has only had since the beginning of December, 2014, to get up to speed on this case and to obtain
an expert witness.  As Mr. Walz has represented that ninety days is the minimum amount of time
that he needs to prepare this case for trial, the Court concludes that a ninety-day continuance
furthers the ends of justice.

In sum, after weighing the best interests of the public and of Loera with the ends of
justice, the Court finds that ordering a continuance will strike a proper balance between the ends
of justice, and the best interests of the public and of Loera, for the reasons stated in the Motion,
the Reply, at the hearing, and in this Memorandum Opinion and Order.  Specifically, Loera's

need to have a fully prepared attorney and expert outweigh his and the public's interests in a speedy trial.  See 18 U.S.C. § 3161(h)(7).  The Court will set the trial for August 17, 2014.  This ninety-day continuance is sufficient, without being greater than necessary, for Mr. Walz to complete the tasks set forth in the Motion, the Reply, and at the hearing.

Although Loera asked the Court to vacate the standard discovery orders in the Motion, see Motion at 1, he did not raise the issue at the hearing.  Accordingly, the Court did not rule on that request and those orders are still in effect.  If the parties have any outstanding issues with the discovery orders, they can either resolve them with each other given the new trial date or bring them to the Court's attention with a motion.

**IT IS ORDERED** that the Defendant's Opposed Motion to Declare this Case Complex for Speedy Trial Purposes and to Set Aside the Standard Discovery Orders, filed March 20, 2015 (Doc. 78), is denied.  The Court will, however, grant the parties a ninety-day continuance of the trial date.  The May 18, 2015, trial date is vacated, and trial is rescheduled for August 17, 2015.


_____
UNITED STATES DISTRICT JUDGE


*Counsel:*

Damon P. Martinez
  United States Attorney
Dean S. Tuckman
Cynthia Weisman
Kristopher N. Houghton
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

  *Attorneys for the Plaintiff*

Jerry A. Walz
Walz & Associates
Albuquerque, New Mexico

   *Attorneys for the Defendant*